UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSIE J. BARNES,

                              Plaintiff,

                                                              DECISION AND ORDER

-vs-

                                                                 10-CV-6164 CJS

COUNTY OF MONROE, et al.,

                              Defendants.

_____

INTRODUCTION

Jesse James Barnes ("Plaintiff"), a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. Now before the Court are the following applications: 1) a motion to dismiss the complaint (Docket No. [#6]); 2) a motion to amend the complaint [#12]; 3) a motion for summary judgment [#18]; and 4) a second motion to amend the complaint [#27]. For the reasons that follow, Plaintiff's second motion to amend is granted, and the remaining applications are denied.

BACKGROUND

Plaintiff contends that his rights were violated during 2008 and 2009 at the Monroe County Jail ("the jail"), where he was confined during the pendency of criminal prosecutions against him. Complaint [#1] ¶¶ 1, 3. On March 22, 2010, Plaintiff commenced this action.

*Plaintiff's Complaint (Docket No. [#1])*

Plaintiff's Complaint [#1] asserts the following facts. In or about July 2008, Plaintiff was arrested, charged with burglary, and remanded to the jail pending trial. Id. at ¶¶ 21-

1

22.¹ On or about August 6, 2008, Plaintiff was fighting with another prisoner named Eades, when Deputy Newton ("Newton") jumped on Plaintiff's back, and then struck him in the mouth, knocking out one of Plaintiff's teeth. *Id*. at ¶ 29.  Newton and two "John Doe" jail officers wrote a misbehavior report against Plaintiff, and placed him in the Special Housing Unit ("SHU"). *Id*. at ¶ 30.  On October 11, 2008, Plaintiff was again placed in SHU by Sergeant DeRosa ("DeRosa"), Major Krenzer ("Krenzer"), Captain Jolly ("Jolly"), and "John Doe" Lieutenant. *Id*. at ¶ ¶ 31, 131.  Plaintiff contends that his placement in SHU was retaliatory. *Id*. at ¶ 131.  Plaintiff further contends that his placement in SHU violated his rights to due process. *Id*. at ¶ 144.  On October 16, 2008, Krenzer sent Plaintiff a memo indicating that the circumstances of Plaintiff's arrest and his institutional record justified him being placed in SHU. *Id*. at ¶ 32.  On October 20, 2008, Plaintiff sent correspondence to Sheriff O'Flynn ("O'Flynn"), complaining that DeRosa and Krenzer were discriminating against him and denying him due process. Id. at ¶ 33.

On October 26, 2008, Plaintiff sent a letter to an unnamed "defendant," asking to be moved to a different facility. *Id*. at ¶ 34.  In that regard, Plaintiff alleges that Krenzer, DeRosa, Corporal Carlos ("Carlos"), Corporal Kennelley ("Kennelley"), Corporal Knapp ("Knapp"), Corporal Guest ("Guest"), Corporal Kimball ("Kimball"), Corporal Cavicchioli ("Cavicchioli"), Corporal Cardella ("Cardella"), Corporal Tripoli ("Tripoli"), Corporal S. Peck ("S. Peck"), Corporal T. Peck ("T. Peck"), Corporal Messura ("Messura"), Corporal Pratt ("Pratt"), Corporal Preston ("Preston"), Corporal Gatti ("Gatti"), Corporal Amatore

---

¹The Complaint is seemingly inconsistent as to dates.  For example, Plaintiff alleges that he was arrested October 2008 and remanded to jail to await trial in July 2009. See, Complaint at ¶ ¶ 21-22. However, he also indicates that he was in jail in August 2008. *See id*. at ¶ 28.

2

("Amatore"), Sergeant Bye ("Bye"), Sergeant McGowan ("McGowan"), Sergeant Mooney ("Mooney"), Sergeant Wheatley ("Wheatley"), Sergeant Palma ("Palma"), Lieutenant Horan ("Horan"), Lieutenant Kloner ("Kloner"), Lieutenant Kaiser ("Kaiser"), Lieutenant Dimatino ("Dimatino"), Captain Thomas ("Thomas"), and Jolly discriminated against him by placing him in the jail's "Mainframe" area "with all inner city minorities, where gang activity is rampant [and] hostile situations are most likely to occur with the character and the propensities of the specific minorities they deliberately put together." *Id*. at ¶ 35. Plaintiff alleges that Defendants do not place white prisoners in the Mainframe. *Id*. at ¶ 109. Plaintiff contends that O'Flynn, County Executive Maggie Brooks ("Brooks"), and Superintendent Ronald Harling ("Harling") have "acquiesced" in Monroe County's alleged discriminatory policy of housing inner city minorities together in the jail. *Id*. at ¶¶ 36, 46.

On November 7, 2008, Krenzer placed Plaintiff in keeplock for reasons that are unspecified in the Complaint. *Id*. at ¶ 37.

On November 18, 2008, Plaintiff was beaten by "two younger minorities," Alvin King ("King") and Michael Jones ("Jones"). *Id*. at ¶ 38.[2] A videotape of the incident shows King kicking and stomping Plaintiff. *Id*. at ¶ 39. Tyrone James ("James"), "a friend of Plaintiff's," "spoke with" Corporal Amatore ("Amatore") about the fact that Plaintiff was beaten by King and James. *Id*. at 40. Amatore moved Plaintiff to the reception area of the jail. *Id*. at ¶ 41.

On November 19, 2008, Plaintiff alleges that DeRosa placed him in SHU, because of "racial hatred." *Id*. at ¶ 42. Plaintiff states that Krenzer, Jolly, Horan, and Amatore were also involved in placing him in SHU, based on racial animus and revenge. *Id*. at ¶ 132.

---

[2]Defendants apparently maintain that the beating occurred after Plaintiff either stabbed another inmate with a pencil or threatened to do so. *See, e.g.*, Proposed Second Amended Complaint ¶ 41.

3

Apart from claiming that he was placed in SHU because of "racial hatred," Plaintiff seems to indicate that he was placed in SHU as a consequence of his physical altercation with King and Jones, which was wrongful because the videotape of the incident shows Plaintiff being beaten. Plaintiff blames his confinement in SHU on Amatore, DeRosa, Krenzer, Harling, and O'Flynn. *Id*. at ¶ 43. Plaintiff contends that he was supposed to be released from SHU on December 17, 2008, but was kept in SHU until December 23, 2008. Plaintiff blames this delay on Amatore, DeRosa, Horan, Jolly, Krenzer, Harling, and O'Flynn. *Id*. at ¶ 44. Plaintiff claims that he notified O'Flynn, Krenzer, and Harling that he was improperly placed in SHU, but they did not intervene. *Id*. at ¶ 133.

After being released from SHU, Plaintiff was housed for three days in a reception cell which he contends was "atrociously filthy." *Id*. at ¶ 45. Plaintiff blames such placement on Knapp, Kennelley, Cardella, Peck,[3] and Tripoli. Id.

On December 26, 2008, Plaintiff told Tripoli that he did not want to be placed back in Mainframe housing area of the jail. According to Plaintiff, Tripoli responded that he did not care if Plaintiff got beaten up again in Mainframe, and that Plaintiff was either going to agree to be placed back in Main Frame or Tripoli would place him back in SHU. *Id*. at ¶ 47.

On January 19, 2009, Plaintiff was beaten up by three other prisoners. *Id*. at ¶ 48. Plaintiff contends that Deputy Willis ("Willis") and Deputy Waud ("Waud") "bragged" to inmates that Plaintiff had been attacked. *Id*.

On February 26, 2009, Waud made a comment to Plaintiff about the fact that Plaintiff had "a large bag of commissary items" in his cell. *Id*. at ¶ 49. Later that day, the bag of

---

[3]This allegation does not indicate whether it was S. Peck or T. Peck.

commissary items and other property was stolen from Plaintiff's cell. *Id*. at ¶ 50. Plaintiff contends that he was only absent from his cell for a short time, and that it would have required at least four prisoners acting together to steal his property. *Id*. at ¶ 51. He apparently believes that inmates Frye ("Frye"), Houston ("Houston"), Spivey ("Spivey"), and Mohammed ("Mohammed") stole his property. Plaintiff states that Waud was "a friend" of prisoners Frye and Houston, apparently suggesting that Waud orchestrated the theft. *Id*. at ¶¶ 52, 54. Plaintiff further states that on several occasions Waud called him "a piece of shit." *Id*. at ¶ 53.

Plaintiff alleges that there was videotape evidence of Frye, Houston, Spivey, and Mohammed stealing his property. *Id*. at ¶ 55. He further contends that Waud, S. Peck, Mooney, Officer DiMartino ("DiMartino"), and "John Doe Video Room Deputy" destroyed such videotape evidence. Id. Plaintiff further alleges that Brooks, O'Flynn, Harling, Thomas, Jolly, and Krenzer "acquiesced" in the conspiracy to destroy the evidence. *Id*. at ¶ 56.

On February 26, 2009, DeRosa allegedly told Plaintiff, "Hey Jessie, I see you got your ass kicked again." Id. at ¶ 57. The same day, Deputy Ruby ("Ruby") and a John Doe Defendant, who was apparently a sheriff's deputy, were talking in Plaintiff's presence, and the John Doe defendant commented that Plaintiff "got his ass kicked." *Id*. at ¶¶ 59-60. Plaintiff further contends that the John Doe deputy smirked at him and tapped his finger on his service revolver. *Id*. at ¶ 61. Subsequently, a "Jane Doe Nurse" commented that Plaintiff "always gets his ass kicked." Id. at ¶ 65.

Between February 27, 2009 and March 2, 2009, Plaintiff was housed in a booking cell, during which time he maintains that Krenzer, Harling, and Jolly denied him showers and recreation. *Id*. at ¶ 67.

5

On March 1, 2009, Deputy Kluth ("Kluth") "harassed and antagonized" Plaintiff, by laughing at him and making "belittling" comments. *Id*. at ¶ ¶ 68-72. Plaintiff does not know Kluth, but feels that Kluth was motivated by racial animus. *Id*. at ¶ 71.

On March 2, 2009, Plaintiff was visited by his lawyer, Mr. Mix ("Mix"), who brought Plaintiff a box of documents. Kimball told Mix that he could not give Plaintiff the documents, and placed the box behind a desk. *Id*. at 73. Later that day Plaintiff saw Kluth and Kaiser talking, and Kluth pointed his finger at Plaintiff. *Id*. at ¶ 74. Still later that day, Kimball told Plaintiff that he was being moved to SHU, and that Plaintiff should take all of his property that he could carry, and that Kimball would allow him to return to retrieve the rest of his property. Id. at ¶ 76. However, once Plaintiff was in SHU, Kimball told him that his property would be brought to Plaintiff. Id. at ¶ 77.

Plaintiff was strip searched by Deputy Scally ("Scally") before being placed in SHU. *Id*. at ¶ 78. Scally called Plaintiff a "dummy" and "retard" for failing to follow directions, and after Plaintiff "had a verbal confrontation" with Scally, Scally said, "I promise I will get you." *Id*. at ¶ 79. Plaintiff contends that Scally then took some of Plaintiff's property, including towels, magazines, and a radio, and either destroyed them or gave them to other prisoners. *Id*. at ¶ ¶ 80-81. Plaintiff maintains that Scally and "John Doe Defendant" also poured shampoo and conditioner on his legal papers, threw away "entire files," and "discombobulated" the rest of the papers. Id. at ¶ 82. Deputy Potocki ("Potocki") allegedly failed to intervene to stop the destruction of Plaintiff's property. *Id*. at ¶ 83.

On March 3, 2009, Plaintiff filed a grievance concerning the damage to his property. *Id*. at ¶ 84. On March 11, 2009, Scally allegedly approached Plaintiff's cell and made an obscene remark and gestures. Id. at ¶ 85. Subsequently, Atkins, Scally, Guest, Amatore,

6

and McGowan filed a misbehavior report accusing Plaintiff of threatening Scally. *Id*. at ¶¶ 86, 128.  Plaintiff maintains that the misbehavior report was false and retaliatory. *Id*.  As a result of the misbehavior report, Hayes, Horan, Jolly, and Krenzer denied Plaintiff showers, recreation,[4] and visits, and placed him on full restraints. *Id*. at ¶¶ 87, 135.  Plaintiff filed a grievance against Scally, Atkins, Guest, and McGowan, but the grievance and a subsequent appeal were denied. Id. at ¶¶ 88-89.

On April 17, 2009, Newton issued Plaintiff another misbehavior report for making threats against staff. *Id*. at ¶ 97. Plaintiff contends that the misbehavior report was false and retaliatory. *Id*.

On May 2, 2009, an inmate threw urine, feces, and dirty water into Plaintiff's SHU cell. *Id*. at ¶ 98.  Plaintiff contends that Willis instructed the inmate to do so. *Id*.  Plaintiff further alleges that Willis intentionally destroyed one of Plaintiff's personal towels, which had sentimental value to Plaintiff, while cleaning up the mess in Plaintiff's cell. *Id*. at ¶¶ 99-100. Plaintiff alleges that Willis also filed two false retaliatory misbehavior reports against him. *Id*. at ¶ 102.  Corporal Shellard ("Shellard") later placed a "white jail towel" in Plaintiff's property to replace the other towel. Id. at ¶ 101.

Also on May 2, 2009, Plaintiff alleges that Gatti, whom Plaintiff had never seen before, called Plaintiff a nigger and said that he would kill Plaintiff. *Id*. at ¶ 104.

On May 4, 2009, Atkins, Scally, Amatore, Horan, Jolly, and "John Doe" officer filed a misbehavior report against Plaintiff, which he maintains was false and retaliatory. *Id*. at ¶ 105.  The same day, Plaintiff was placed on a "styro-foam tray order," as a result of a

---

[4] Plaintiff states that he was denied showers and recreation for fourteen consecutive days. Id. at ¶ 135.

conspiracy between Atkins, Scally, Amatore, McGowan, Horan, Jolly, Krenzer, and John Does, to tamper with his meals. *Id*. at ¶ 136. Plaintiff states that he notified Harling of this conspiracy, but Harling did not remedy the situation. *Id*. at ¶ 137.

On June 12, 2009, Plaintiff had a conversation with an inmate who was a cousin of Walter Eades, who is apparently the same inmate with whom Plaintiff fought on or about August 6, 2008. According to Plaintiff, the inmate told him that on August 7, 2008, Newton had instructed Eades to attack Plaintiff. *Id*. at ¶ 107.

Plaintiff also complains about certain conditions of confinement at the Monroe County Jail. Id. at ¶ 108. Specifically, he complains about the fact that lights are left on 24 hours a day in the SHU, which he maintains is a form of discrimination, since most of the SHU inmates are Black. *Id*. at ¶ 108. Plaintiff also contends the Black inmates are "denied access to public information of current affairs," since the jail does not allow SHU inmates to have newspapers. *See, id*. at ¶ 124.

On August 12, 2009, Daly and Diflores told Plaintiff that he needed to attend a parole hearing, and they took him to a visiting room. *Id*. at ¶ 112.[5] When Plaintiff arrived at the visiting room, present were Daly, Deputy Chance ("Chance"), Deputy Alberti ("Alberti"), and an "older John Doe." *Id*. at ¶ 113. Plaintiff remained in the room for 45 minutes, during which time Burns denied Plaintiff's request to have his handcuffs loosened. *Id*. at ¶¶ 114-115. Plaintiff contends that he asked Shellard to allow him to leave the area to obtain his legal papers, and Shellard responded by striking Plaintiff and smashing him into a glass

---

[5] It appears that the actual purpose of the visit was for the Ontario County Attorney's Office to conduct a hearing pursuant to New York General Municipal Law § 50(h). *See*, Proposed Second Amended Complaint ¶ 99.

partition. *Id*. at ¶¶ 118-119. Plaintiff contends that Shellard, Daly, and Alberti then threw him to the floor and kicked, punched, and stomped him. *Id*. at ¶ 120. Plaintiff states that Daly and Alberti escorted him to another part of the jail, while assaulting him further. *Id*. at ¶ 121. Plaintiff alleges that Lipari observed Daly and Alberti assaulting Plaintiff, but did not intervene. *Id*. at ¶ 121. Plaintiff maintains that while Daly and Alberti were assaulting him, he grabbed a gate to prevent him from being slammed to the floor, and Deputy Galen ("Galen") grabbed Plaintiff's hand and told him to let go of the gate. *Id*. at ¶ 122.

In response to the aforementioned events, Plaintiff filed various grievances and complaints with Krenzer, Harling, Lipari, and "sergeants." *Id*. at ¶¶ 106, 125. Plaintiff contends that Guest, Peck, and Shellard conducted biased and prejudiced investigations into his complaints. Id. at ¶ 125. Plaintiff alleges that it is a policy of the Monroe County Jail to conduct such biased investigations, and that Steward, Brooks, O'Flynn, Harling, Jolly, Lipari, and Krenzer are aware of the policy. Id. at ¶ 127, 129-130.

During the period of his confinement at the Monroe County Jail, Plaintiff spent a number of stints in SHU, after having been found guilty of disciplinary infractions, as discussed above. Plaintiff contends that his procedural due process rights were violated at those disciplinary hearings. *Id*. at ¶ 138. Plaintiff contends that unconstitutional SHU sentences were imposed on him, at various hearings conducted by Messura, Preston, and Pratt, and that although he complained to Harling and Krenzer about the violation of his due process rights, they took no action. *Id*. at ¶ 138.

On May 20, 2009, Plaintiff alleges that O'Flynn, Jennifer Sommers ("Sommers"), and

9

Daniel DeLaus ("DeLaus")[6] withheld videotape evidence from him concerning incidents that occurred at the jail on November 18, 2008, February 26, 2009, and March 1, 2009. *Id*. at ¶¶ 139-140.  He further alleges that they acted in accordance with a policy of Monroe County. *Id*.

On May 20, 2009, Preston allegedly provided false evidence against Plaintiff concerning the February 26, 2009 incident. *Id*. at ¶ 141.

On February 26, 2009 and May 20, 2009, Krenzer, Harling, Jolly, DiMartino, Mooney, Peck, Waud, and John Doe officers allegedly destroyed evidence. *Id*. at ¶ 142.  In that regard, Plaintiff apparently maintains that they destroyed videotape evidence of inmates stealing property from Plaintiff's cell. *Id*.

On September 24-25, 2009, Sommers allegedly withheld "crucial videotape evidence" from Plaintiff. *Id*. at ¶ 143.

Plaintiff further contends that Monroe County, Brooks, O'Flynn, Stewart and Nora Demarco violated his rights  and denied him access to the courts by maintaining an inadequate law library at the jail. Id. at ¶ 145.  Plaintiff also complains about the procedures for handling inmate legal mail. *Id*.  In addition, Plaintiff alleges that Lipari, Krenzer, Thomas, Harling, and O'Flynn denied him access to two bins of his legal documents, in order to harass him. *Id*. at ¶ 149.  Plaintiff further alleges that Deputy DeMarco (not Nora Demarco) destroyed a bag full of his legal documents. *Id*. at ¶ 151.

Plaintiff also contends that Defendants were deliberately indifferent to his serious medical needs, in the following respects: 1) Jane Doe nurses failed to make entries in

---

[6]Sommers and DeLaus are not defendants in this action. *See*, [#12-2] ¶¶ 1-18.

Plaintiff's medical records, or made false entries; *Id*. ¶¶ 152-53, 157; 2) Nurse McQueeney failed to note Plaintiff's complaints over a period of three months; *id*. at ¶ 154; 3) Nurses Scarpulla and McQueeney made a false entry; *id*. at ¶ 155; 4) McQueeney denied him pain medication between October 2008 and December 2008; *id*. at ¶ 158; and 5) the County disclosed Plaintiff's medical records to Lipari and Guest without Plaintiff's consent; *id*. at ¶ 159. Plaintiff maintains that Brooks, O'Flynn, Krenzer, and Harling acquiesced in the alleged medical deprivations by failing to remedy the problems after Plaintiff complained. *Id*. at ¶ 160.

Plaintiff contends that Atkins retaliated against him by "filing degenerate administrative segregation reports each week," and by causing other staff to dislike him. *Id*. at ¶ 161. Plaintiff also alleges that Brooks, O'Flynn, and Krenzer failed to protect him from Atkins. *Id*.

Plaintiff further alleges that on August 14, 2009, Knoy, Palmer, Harris, and Krenzer harassed Plaintiff's family members when they came to visit Plaintiff at the jail. *Id*. at ¶¶ 162-163.

*Defendants' Motion to Dismiss*

On July 6, 2010, Defendants filed the subject motion to dismiss [#6]. The motion consists primarily of a two-page attorney affirmation and a twelve-page memorandum of law. Defendants argue that the Complaint fails to state claims against them in their official capacities, and that the claims against them in their individual capacities are barred by qualified immunity. However, Defendants' papers do not explain how qualified immunity applies to them, in light of Plaintiff's allegations. *See*, Memo of Law [#6-3] at pp. 7-8.

Defendants alternatively contend, in similar cursory fashion, that the Complaint fails to properly state claims under the substantive due process clause, procedural due process clause, or equal protection clause. *Id*. at pp. 9-11.

### *Plaintiff's Motion to Amend*

On August 3, 2010, Plaintiff filed the subject motion to amend [#12]. According to Plaintiff, the purpose of the amendment is to clarify whether each defendant is being sued in his or her individual or official capacity. Motion [#12] at p. 1.  The Proposed Amended Complaint is a copy of the same 52-page handwritten complaint that Plaintiff originally filed, except that in the section entitled "Parties," he has added language indicating that each Defendant is sued in his or her "official and personal capacity." *See*, Proposed Amended Complaint [#12-2] at pp. 4-7.

### *Defendants' Summary Judgment Motion*

On October 6, 2010, Thomas Beilein ("Beilein"), Phyllis Harrison-Ross ("Harrison-Ross"), and Daniel Stewart ("Stewart") filed the subject motion for summary judgment [#18]. The moving Defendants contend that the official capacity claims against them are barred by the Eleventh Amendment, and that the claims against them in their individual capacities must be dismissed for lack of personal involvement. *See*, Memo of Law at pp. 3-7. Alternatively, the moving Defendants contend that they are entitled to qualified immunity. *Id*. at pp. 7-8.

### *Plaintiff's Second Motion to Amend the Complaint*

On December 27, 2010, Plaintiff filed the subject second Motion to Amend [#27]. According to Plaintiff, the proposed amendment is intended to accomplish the following: 1)

add substantive due process claims against Monroe County, Stewart, Beilein, and Harrison-Ross; 2) add substantive due process claims against the Citizen's Policy and Complaint Review Council; 3) indicate that all parties are being sued only in their individual capacities; and 4) discontinue claims relating to inadequate law library and denial of access to Court, against "Nora Demarco, [Officer] DeMarco, and others." Motion [#27] at pp. 1-2.

The proposed new substantive due process claims are set forth in the Proposed Second Amended Complaint at paragraphs 24-28, 105, 107, 108, 111, 114, 117, 119, and 122. *See*, Motion to Amend [#27]. The proposed substantive due process claims essentially involve two allegations: 1) the Defendants had a *de facto* policy to deny Plaintiff the right to pursue grievances against jail staff for harassment, in violation of his rights under 7 NYCRR § 701.8(d)(1);[7] and 2) the Defendants had a *de facto* policy to deny Plaintiff his procedural due process rights at disciplinary hearings, which resulted in the imposition of arbitrary and unfair punishments, in violation of the procedures set forth in 7 NYCRR § 254.6(a)(2)[8] and 9 NYCRR § § 7006.8-7006.11.[9] Liberally construing these allegations, Plaintiff appears to be claiming that Defendants maintained a grievance program and a disciplinary program that were essentially corrupt, and which were used to punish him and retaliate against him.

On December 30, 2010, Defendants filed papers [#28] in opposition to the motion to

---

[7] For example, he alleges that Defendants conducted biased and incomplete investigations into his complaints of harassment by staff. He states that in one instance, the staff member assigned to investigate his complaint was the same staff member against whom he had filed the complaint. See, Proposed Second Amended Complaint ¶ 107.

[8] 7 NYCRR § 254.6(a)(2) deals with disciplinary "Superintendent's Hearings," and states: "The inmate shall be present at the hearing unless he or she refuses to attend, or is excluded for reasons of institutional safety or correctional goals. The entire hearing must be electronically recorded."

[9] For example, he maintains that Defendants denied him his rights to employee assistance, to call witnesses, to have an impartial hearing officer, to have the entire hearing recorded, and to be present for the presentation of all evidence. *See*, Proposed Second Amended Complaint ¶ ¶ 119-120.

13

amend, in which they argued, in cursory fashion, that Plaintiff's motion to amend should be denied as futile, since the Proposed Second Amended Complaintit failes to state a claim against any Defendant, and since Defendants are entitled to qualified immunity. *See*, Fuller Affirmation [#28]. On February 14, 2011, Defendants filed additional papers [#39] in opposition to the motion to amend. Defendants contend that any claims against Stewart, Beilein, Harrison-Ross, and any "John Doe" member of the Citizens' Policy and Complaint Review Council must be dismissed for lack of personal involvement in any alleged constitutional violation.

*Plaintiff's Voluntary Discontinuance of Claims Against Stewart, Beilein, Harrison-Ross, and Citizens Policy And Complaint Review Council*

On July 8, 2011, Plaintiff voluntarily discontinued his claims against Stewart, Beilein, Harrison-Ross, and the Citizens Policy and Complaint Review Council. *See*, Notice of Voluntary Discontinuance [#61]. The Court issued an Order [#61] dismissing those claims and terminating those defendants as parties to this action.

## DISCUSSION

At the outset, there is no need for the Court to consider Defendants' summary judgment motion [#18], since Plaintiff has already voluntarily discontinued his claims against Stewart, Beilein, Harrison-Ross, and the Citizens Policy and Complaint Review Council. *See*, [#60][#61]. Accordingly, Defendants' summary judgment motion is denied as moot.[10]

As for Plaintiff's second motion to amend [#27], courts must freely give leave to amend pleadings "when justice so requires." FRCP 15(a)(2). Nevertheless, a "district court has

---

[10] For the same reason, Defendant's second submission [#39] opposing Plaintiff's second motion to amend is moot, because it only addressed the proposed new claims against Stewart, Beilein, Harrison-Ross, and the Citizens Policy and Complaint Review Council.

discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir.2009) (internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished). In ruling upon a motion to dismiss under FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted). In that regard, a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," as well as "a short and plain statement of the claim, showing that the pleader is entitled to relief." FRCP 8(a).

Defendants oppose the Proposed Second Amended Complaint as being futile and frivolous. Specifically, they indicate that the complaint fails to state a claim against any Defendant in his or her official or individual capacity, is barred by qualified immunity, and fails to state claims for substantive due process violations, procedural due process violations, or equal protection violations. However, Defendants' arguments on these points are generalized and conclusory, and do not refer to specific aspects of the proposed pleading. Defendants' submission [#28] does not explain why any of the Defendants is entitled to qualified immunity, nor does it provide any legal analysis of Plaintiff's proposed substantive

15

due process[11], procedural due process, or equal protection claims. Defendants have, therefore, not shown that the proposed amendment would be futile. Accordingly, Plaintiff's motion [#27] to file a Second Amended Complaint is granted. As a result, Defendants' motion [#6] to dismiss the original Complaint and Plaintiff's first motion [#12] to amend are moot.

CONCLUSION

Defendants' Motion to Dismiss [#6], which was directed at the original Complaint, is denied as moot, since the Court is permitting Plaintiff to file an amended complaint. Plaintiff's first Motion to Amend [#12] is similarly denied as moot, since it has been superseded by Plaintiff's second motion to amend. Defendants' summary judgment motion [#18] is denied as moot. Plaintiff's Second Motion to Amend [#27] is granted, and the claims may go forward as to the Defendants listed in the caption, with the exception of Stewart, Beilein, Harrison-Ross, and the John Doe members of the Citizens Policy and Complaint Review Council, who have been dismissed from the action.

The Clerk of the Court is further directed to terminate "DeMarco, Deputy," as a party to this action, as Plaintiff is discontinuing any claims relating to the jail's law library. *See*,

---

[11] The Second Circuit has held that a prison inmate can assert a substantive due process claim by alleging that defendants retaliated against him for exercising his constitutional rights, including the right to petition the government for redress of grievances. *See*, *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988). However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Amaker v. Haponik*, No. 98 CIV. 2663, 2000 WL 343772 at *5 -6 (S.D.N.Y. Mar. 31, 2000) (*quoting United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Accordingly, to the extent that Plaintiff is alleging that Defendants retaliated against him because he filed grievances, his claim is more properly characterized as being a First Amendment Retaliation Claim.

Case 6:10-cv-06164-EAW-JWF   Document 62   Filed 01/11/12   Page 17 of 17

Motion to Amend [#27].[12]

The Second Amended Complaint [#27-1] is now Plaintiff's operative pleading in this action. The Clerk of the Court is directed to cause copies of the Summons, Second Amended Complaint, and this Decision and Order to be served on the Defendants who have not already been served in this action, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

Dated:     Rochester, New York
           January 10, 2012
                                    ENTER:


                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

---

[12] The original Complaint [#1] described claims against "Nora DeMarco" and "Deputy DeMarco the short guy," relating to problems with the law library, though neither was included in the caption of the Complaint. *See*, Complaint [#1] ¶ ¶ 92, 145-148, 151. Deputy DeMarco is currently listed as a defendant on the docket sheet, but is being removed inasmuch as Plaintiff has discontinued his law library claims. Nora DeMarco was not previously listed as a defendant in the docket caption.